the patent does not contain a sufficient specification of the proportions of the ingredients, to meet the requirements of the law. This defence is not set up in the answer and cannot be considered. Goodyear v. Providence Rubber Co. [Case No. 5,583]; Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 793.

The defence of the anticipation of this patent by the Wetterstedt patent was fully considered in Tarr v. Folsom [supra]. The disclaimer, in the Tarr and Wonson patent, of such mixtures as are referred to in the Wetterstedt patent should be construed as the Wetterstedt patent itself is to be construed. That patent describes a ship's paint to be made of pulverized antimony and pure oxide of copper, in which a protective influence of the antimony upon the copper is incorrectly ascribed to a supposed galvanic action. The antimony in the Wetterstedt paint was not so used that it performed the function of a base, retarding the dissolution of the copper, by itself dissolving more slowly than the oxide of the copper.

The testimony of Brown and Gardner, when carefully considered, does not prove an anticipation of the Tarr and Wonson invention. Sulphuret of antimony, used by defendants in their paint, is an earthy or mineral matter, which dissolves in water more slowly than the oxide of copper. It comes within the description of the retarding earthy or mineral basis described in the division B, and the use of it, in combination with oxide of copper and a suitable vehicle or medium, constitutes infringement, notwithstanding to the oxide of copper is added a small quantity of arsenite of copper or arsenate of copper, or both.

Decree for injunction and account as prayed for in the bill.

[For other cases involving this patent, see note to Tarr v. Webb, Case No. 13,757.]

---

WONSON (UNITED STATES v.). See Case No. 16,750.

WOOD, Ex Parte. See Case No. 6,825.

---

## Case No. 17,935.

### In re WOOD.

[6 Ben. 339;[1] 13 N. B. R. 96; 1 N. Y. Wkly. Dig. 366.]

District Court, S. D. New York. Feb., 1873.

VOLUNTARY BANKRUPTCY—AMENDMENT OF PETITION.

A bankrupt's petition, which was filed in February, 1868, alleged only that he "had a place of business in New York." In February, 1873, he asked to file an amended petition, in which the words, "and has there carried on business of his own," were added. *Held*, that the amendment could not be allowed, as the words "business of his own" are not found in the act [of 1867 (14 Stat. 517)], but that the applica-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

tion to amend might be renewed, on an affidavit showing the facts and the reasons why the amendment was not asked for sooner.

[In the matter of Edward T. Wood, a bankrupt.]

The petition in this case was filed February 29, 1868. It stated that the petitioner "had a place of business in New York." In February, 1873, the petitioner asked to file an amended petition, in which the following words: "And has there carried on business of his own," were added to the above allegation.

BLATCHFORD, District Judge. The amendment asked cannot be granted in the form proposed. The words, "business of his own," are not found in the act. The motion may be renewed on notice, on an affidavit showing the existence, at the date of filing the petition, of the facts specified in section 11 as necessary to give jurisdiction, setting forth specifically the words proposed to be stricken out and those proposed to be inserted, and the reasons why the petition was not made originally in the proper form, and the reasons why the amendment was not applied for sooner after the filing of the specifications.

---

## Case No. 17,936.

### In re WOOD.

[8 Ben. 237.][1]

District Court, S. D. New York. Sept., 1875.

BANKRUPTCY—TIME OF APPLICATION FOR DISCHARGE.

1. W. was adjudged a bankrupt on March 2, 1868. His application for a discharge was not made till June 19, 1869. A debt was proved and assets came to the hands of the assignee. *Held* that, under the decision of the circuit court for the Northern district of New York; in Re Sloan [Case No. 12,945], the application was made too late, and that no discharge could be granted in the case.

2. All applications for discharge must be made within one year from the adjudication. Where no debts have been proved, or no assets have come to the hands of the assignee, the application may be made after the expiration of sixty days from the adjudication. Where debts have been proved, and assets have come to the hands of the assignee, the application may be made after, but not till after, the expiration of six months from the adjudication.

[In the matter of Edward T. Wood, a bankrupt.]

S. G. Courtney, for bankrupt.

BLATCHFORD, District Judge. The adjudication of bankruptcy, in this case was made March 2, 1868. The application for a discharge was not made till June 19, 1869. Under the recent ruling of Mr. Justice Hunt (concurring with the opinion of Judge Wallace), in the case of In re Sloan [Case No.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

12,945], in the Northern district of New York, the application was made too late, because not made within one year from the time of the adjudication. Mr. Justice Hunt says: "The authority to apply for a discharge rests entirely upon section 29. It must necessarily be taken with the limitations in that section contained. The only right to apply, there given, is to be exercised within one year from the time of the adjudication. In my judgment, this applies to all cases, whether there are debts proved, or assets received, or not. It is a case of limited authority, and there is no power to grant a discharge, unless it is applied for within the time prescribed. The excuse of the bankrupt for the delay is a reasonable one, and, if there was power, I should accept it as satisfactory." It has heretofore been the practice of this court to allow applications for discharge to be made after the expiration of one year from the adjudication of bankruptcy, in cases where the two circumstances concurred, that debts had been proved. and assets had come to the hands of the assignee, the construction given by this court to section 29 of the act [of 1867 (14 Stat. 531)],—section 5108 of the Revised Statutes,—being, that the application within one year from the adjudication was required only where no debts had been proved or no assets had come to the hands of the assignee; that, where either of those circumstances existed, the application might be made at any time after the expiration of sixty days from the adjudication, and within one year from the adjudication; and that, where debts had been proved and assets had come to the hands of the assignee, a discharge might be applied for at any time after the expiration of six months from the adjudication, and even after the expiration of one year from the adjudication. In the present case a debt was proved, and assets had come to the hands of the assignee. Therefore, under the former rulings of this court, the application was in time, although not made until more than 15 months after the adjudication. But the decision in Re Sloan [supra], is that of the circuit court, in review of the decision of the district court, and is controlling on this court. It is to the effect that the proper interpretation of the statute is, that all applications for discharge must be made within one year from the adjudication; that, where no debts have been proved, or no assets have come to the hands of the assignee, the application may be made after the expiration of sixty days from the adjudication; and that, where debts have been proved, and assets have come to the hands of the assignee, the application may be made after, but not until after, the expiration of six months from the adjudication. Under this construction, no discharge can be granted in this case. The question is one of the power and jurisdiction of the court, and not one depending upon the opposition of a creditor.

## Case No. 17,937.

### In re WOOD.

[5 N. B. R. 421.] [1]

District Court, W. D. Tennessee. 1871.

#### BANKRUPTCY—FRAUDULENT TRANSFER.

A transfer which is only the execution of a contract made when there was no circumstance to impeach it as an intended fraud on the bankrupt law, and when the parties were acting in good faith and long before anything occurred to throw a suspicion over the solvency of the debtor, will be protected, and a bill brought by the assignee in bankruptcy to recover personal property conveyed under the above state of facts will be dismissed.

[Cited in Smith v. Craft, 17 Fed. 706.]

In December, eighteen hundred and sixty-nine, within six, but more than four months prior to the filing of the petition in this case, James P. Wood, the bankrupt, proposed to one Willingham, to whom he owed a note for five thousand dollars, to convey to him certain land in payment of the debt, which proposition Willingham declined. Wood then told him that he could very easily sell the land and would do so to pay that debt if Willingham would take the purchase notes, to be secured by lien on the land in payment, to which Willingham agreed, but not in writing. Wood did afterwards sell the land and took notes for the purchase money for about the amount of the Willingham debt. Before they were delivered, Howell, Wood & Co., an extensive mercantile firm at Memphis, became bankrupt, and it was generally rumored that J. P. Wood was, by their failure, rendered insolvent by reason of his liabilities for that firm, but there was no proof that Willingham knew or had cause to know of these rumors about James P. Wood. He had before that come to Brownsville by appointment, to settle with Wood and take the purchase notes, but owing to sickness of one of the parties the settlement was not made. A few days after the failure of Howell, Wood & Co., James P. Wood and Willingham did settle by the surrender of Wood's note and the transfer to Willingham of the purchase notes for the land, and within four months afterwards James P. Wood became bankrupt. It was in proof that James P. Wood was regarded as solvent, and that at the time of the transfer of the notes it was not positively known in the community, when these transactions took place, to what extent he was involved in the failure of Howell, Wood & Co., but it was the general belief that he was very largely so involved. The assignee filed a bill in the district court to set aside the transfer of the notes to Willingham and to recover them for the estate.

Smith & Jefferson, for assignee.
Estes & Jackson, for Willingham.

1 [Reprinted by permission.]